**UNITED STATES of America ex rel. Adrian ROSA, Petitioner-Appellant,**

v.

**Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent-Appellee.**

**No. 483, Docket 31075.**

United States Court of Appeals
Second Circuit.

Argued May 2, 1968.

Decided May 28, 1968.

Gerald W. Griffin, New York City, for petitioner-appellant.

John G. Proudfit, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

722

IRVING R. KAUFMAN, Circuit Judge:

The determination of guilt or innocence without trial has received increasing attention in recent years. This appeal raises yet another question of the circumstances in which a defendant will be bound by his plea of guilty in open court.

Appellant Adrian Rosa is now serving a sentence of imprisonment of from 7½ to 10 years under a judgment of conviction entered in Supreme Court, Bronx County, Gellinoff, J., on his plea of guilty to robbery in the second degree. Having exhausted available state remedies, he applied for a writ of habeas corpus which was denied by Chief Judge Sugarman without a hearing. Appellant now advances two grounds why the writ should have issued: he contends that his plea was not "voluntary" because induced by the promise of the trial judge to impose a particular sentence and that he should have been permitted to withdraw his guilty plea and reinstate his earlier plea of not guilty of first degree robbery. Our review of the record convinces us that Rosa was not deprived of any right cognizable on federal habeas corpus and we therefore affirm.

The basic facts can be briefly stated. In 1960 Rosa and two others were convicted after a trial by jury of robbery in the first degree. Rosa was sentenced to from 15 to 22 years' imprisonment but his conviction, along with that of one of his co-defendants, Colon, was reversed by the Appellate Division because of prejudicial remarks made by the prosecutor during his summation. People v. Rosa, 14 A.D.2d 741, 220 N.Y.S.2d 138, 139 (1st Dept. 1961) (court specifically noting that proof of guilt was "persuasive"). Accordingly, Rosa and Colon were scheduled to be retried under the original indictment before Judge Gellinoff.

Represented by able counsel and undoubtedly aware of the probable result if they again went before a jury, both men entered into plea negotiations with the prosecution. These ended in the apparent satisfaction—at least at the time—of all concerned and on September 28, 1962, Rosa and Colon moved, through their respective counsel, to change their pleas from not guilty of robbery in the first degree to guilty of robbery in the second degree. Judge Gellinoff, obviously aware of the need for "a penetrating and comprehensive examination of the circumstances under which [a guilty] plea is tendered," Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), stated that he would accept the pleas only if the defendants were in fact guilty and that he would "put on the record the sentence that [he was] going to impose." The prosecutor then described the prior proceedings in the case, the details of the alleged robbery, and what had transpired during the negotiations:[1]

The Assistant District Attorney: I have been in consultation with Mr. Guff of the Legal Aid Society on behalf of Colon, and with Mrs. Steinbock, on behalf of Rosa, and I have made an offer to those defendants to which they have just pleaded. [Sic]

I further told Mrs. Steinbock that I would recommend to the Court the sentences of seven and a half to ten years.
* * *

The Court: Seven and a half for each?

The Assistant District Attorney: Yes.
* * * * * *

The Court: Is robbery in the second degree the kind of conviction where I can sentence for so little, seven and a half to ten?

The Assistant District Attorney: Yes, Judge.

Rosa and Colon confirmed the prosecutor's account and admitted their participation in the crime as charged. Upon

---

1. The prosecutor indicated that he would file with the court the necessary statement explaining his reasons for recommending that the court accept the plea of guilty to the lesser offense, see N.Y.Code Crim.Proc. § 342–a.

this record, Judge Gellinoff proceeded to inform both men that he would accept the prosecutor's recommendations—he would sentence them to imprisonment of from 7½ to 10 years on their pleas of guilty to the lesser offense of second degree robbery.[2] Thus, after the trial judge was satisfied that both men were acting voluntarily, the formal pleas were taken, the defendants sworn and their pedigrees recorded. Sentencing was set for October 5, 1962.

Given a full week to contemplate his fate, Rosa lost the enthusiasm for a plea of guilty he had so clearly shown earlier and accordingly asked his attorney to withdraw his plea of guilty. In accordance with Rosa's instructions, when the case was called for sentencing his attorney told the court that:

> The defendant advises me that when he pleaded guilty the last time we appeared in this court after consulting with me and after being informed by me of the recommendation that would be made by the District Attorney as to the sentence, and the Court having said

that it would follow the District Attorney's recommendation, the defendant feels that after thinking it over after that last appearance in Court, that he was acting hastily on the basis of trying to help his co-defendant Colon by permitting him to get the lesser sentence in view of Colon's proved participation in the crime.

But, believing this maneuver by Rosa a deliberate one so that the state would be prevented from presenting its case against both defendants as it had contemplated before the pleas were changed to guilty, the prosecutor refused to consent to the change of plea, unless Colon also withdrew his plea to the lesser offense and agreed to stand trial with Rosa for robbery in the first degree. Colon, however, apparently quite content with his comparatively short sentence, was disinclined to join Rosa's maneuvers. Faced with the different desires of the two defendants and the certainty that Rosa's plea was voluntary in every respect, Judge Gellinoff refused to permit Rosa to reinstate his plea of not guilty

2. The following discussion illustrates the painstaking care taken by the trial judge to insure that the pleas of guilty conformed to constitutional standards:

The Court: All right. Now, look, Mr. Rosa and Mr. Colon. Everything is going to be put on the record. I'm even going to put on the record the sentence that I am going to impose, because this is not a new case and the Court knows about this, and the Court is going to accept the plea, but with one condition, that you're guilty.

If you still maintain your innocence, I'm not going to take the plea. I don't want any questions later on. I don't want any questions about promises or about coercion, that you were sold a bill of goods or that you were talked into it. Do we understand each other? I'm going to tell you the sentence you're going to get, because I know. Now, is that agreeable to you?

Defendant Rosa: Yes.
Defendant Colon: Yes.

The Court: Now, first let me hear something from the District Attorney. The District Attorney is going to tell me about the case for the record. Then I'm going to ask you, and don't

lie to me—if you're not guilty, say you're not guilty; if you're guilty, say you're guilty, and we will get rid of this case and start you on the road to rehabilitation. You will do certain time and then maybe you can become useful citizens.

\*   \*   \*   \*   \*

The Court: All right.

Well, now, Rosa and Colon, each of you've heard what the District Attorney has said; is that right?

Defendant Rosa: Yes, sir.
Defendant Colon: Yes, sir.

The Court: I mean you participated in this crime?

Defendant Rosa: Yes, your Honor.
The Court: How about you, Colon?
Defendant Colon: Yes, your Honor.
The Court: You did participate in this crime?

Defendant Colon: Yes, your Honor.

The Court: The Court is going to accept the District Attorney's recommendation. The Court is going to sentence each one of you to seven and a half minimum and ten years maximum. That will be done on the day of sentence. We have certain formalities.

and sentenced both men to state prison for 7½ to 10 years—as he had stated clearly he would the previous week.[3]

■■ It is fundamental that when a defendant enters a plea of guilty he waives the most important right known to our system of criminal law—the right to be adjudged innocent or guilty by his peers upon the evidence presented in open court. The effect of a plea of guilty that meets constitutional standards is determinative: "it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1926). To insure that the right to a trial is not undermined by mechanical and ritualistic acceptances of guilty pleas, the Supreme Court has emphasized that a valid plea cannot be "induced by promises or threats which deprive it of the character of a voluntary act," Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962), and must be made only "after proper advice and with full understanding of the consequences," Kercheval v. United States, supra, 274 U.S. at 223, 47 S.Ct. at 583. The lower courts have therefore been enjoined to examine with a most critical eye the circumstances surrounding a plea of guilty. See Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). Moreover, in recent years there has been a growing awareness of the practical importance of plea discussions and arrangements to the administration of justice. Inquiries by scholars have shown that approximately 90 per cent of all convictions are the result of guilty pleas, see, e. g., Newman, Conviction: The Determination of Guilt or Innocence Without Trial 3 (1966), and detailed studies have suggested rules and procedures governing the acceptance of such pleas, e. g., American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty (Tent. Draft 1967). Accordingly, this court has gone to great lengths to protect against convictions based upon guilty pleas due to coercion, misunderstanding or general confusion. See, e. g., United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963).

■ Even under the close scrutiny afforded guilty pleas, the instant appeal would present nothing more than a typical and obviously fair example of a voluntary and knowing plea were it not for Judge Gellinoff's action in informing Rosa of the specific sentence he would impose. Rosa does not maintain that his conviction must be reversed merely because of his agreement with the prosecutor. Such a contention would lack all merit for, as the Fifth Circuit recently has noted, "no federal court has held that a guilty plea induced by a *prosecutor's* promise for that reason alone is involuntary." Brown v. Beto, 377 F.2d 950, 953 (1967) (emphasis in original). Indeed, if attended by proper safeguards and subjected to comprehensive examination, this court has perceived no bar—either in the words of the Constitution or in notions of fundamental fairness—to convictions based upon plea arrangements with the prosecutor. See, e. g., United States v. Hughes, 223 F.Supp. 477 (S.D. N.Y.1963), aff'd, 325 F.2d 789 (2d Cir.), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964).

---

3. In explaining his decision, Judge Gellinoff stated that:

   * * * Counsel insisted on certain commitments from the Court before counsel would advise you [Rosa] to take the plea. The Court was unwilling to give any commitments, but after a great deal of consideration, and after investigating the record and acquainting himself with the facts * * *

the Court decided to accept this lesser plea * * * and did do that which the Court has never done before, and that in open Court say to you on the record that it was the Court's intention to sentence you to seven and one half to ten years, and the Court questioned you in open Court as to whether or not you were taking the plea of your own free will. * * *

Instead, Rosa contends that his plea of guilty was involuntary because induced by Judge Gellinoff's alleged participation in the plea bargaining and promise to sentence him to a specific term of imprisonment. As we read the record, however, it is clear that the plea discussions were between the prosecutor and Rosa and his counsel. In no meaningful sense can Judge Gellinoff be said to have participated in the negotiations.[4] On the contrary, the trial judge had to be informed of what had transpired and the record suggests that he was surprised by the prosecutor's recommended sentence. Since Rosa had already moved to withdraw his not guilty plea and to plead guilty when Judge Gellinoff told him of the precise sentence he would receive, we conclude, as did the District Court, that knowledge of what the sentence would be did not induce the plea. We need not search far for an adequate explanation of Rosa's decision to plead guilty: in light of the result of his previous trial and the Appellate Division's characterization of the evidence against him, he undoubtedly concluded that "it was to his own best interest not to stand trial." United States v. Hughes, supra, 223 F.Supp. at 487.

In any event, we would be hesitant to hold that the mere participation of the trial judge in any aspect of plea negotiations—no matter how tangential and unlikely to be coercive—necessarily renders a plea of guilty involuntary. True, as has frequently been noted, the trial judge is in a paramount position vis-a-vis the accused; unlike the prosecutor, he has substantial control over the trial and can (generally) impose sentence within a broad discretionary range. See, e. g.,

Pleas of Guilty, supra, at 72–74; Comment, 32 U.Chi.L.Rev. 167, 180–83 (1964). See also United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 254 (S.D.N.Y.1966) (dictum).[5] Also, the judge must always remain impartial and capable of objectively determining the voluntariness of the plea. Cf. Von Moltke v. Gillies, supra. The issue ultimately to be resolved is not so much who participated in the plea discussions but whether the defendant's decision to plead guilty was coerced or otherwise invalid. And, that determination can be made only after a careful examination of the facts in each particular case. While we certainly adhere to the proposition that a trial judge must always act with full awareness of the awesome power of his office, this court has held that the participation of the trial judge in plea discussions does not *in itself* render the plea involuntary. See United States ex rel. McGrath v. LaVallee, 348 F.2d 373 (2d Cir. 1965), cert. denied, 383 U.S. 952, 86 S.Ct. 1214, 16 L.Ed.2d 214 (1966). Compare Pleas of Guilty, supra, at 74 (trial judge may indicate his concurrence in the prosecutor's recommendation prior to the time the defendant enters his plea where, as here, the plea would be to a lesser included offense).

Moreover, we fail to perceive in what respect Rosa was coerced, prejudiced or unfairly treated by being told what sentence would be imposed. We cannot blind ourselves to the fact that "it is not at all unusual for the prosecutor to predict the sentence with a high degree of accuracy and to communicate this prediction to the defendant." Newman, Conviction, supra, at 48. Compare Dewey v. United States,

---

4. There is some indication that Judge Gellinoff was aware of the content of the plea negotiations before Rosa moved to plead guilty, see note 3, supra, but he specifically stated that he was "unwilling to give any commitments" and it is obvious that he informed Rosa of the sentence he would impose only after the motion was made.

5. While some of the dicta in *Elksnis* lends support of Rosa's position, that case was correctly decided on its facts. Two essential elements present in *Elksnis* are missing here: the trial court conferred informally with Elksnis and promised a specific term *if* he would change his plea from not guilty of murder in the second degree to guilty of manslaughter in the first degree; and, the court imposed a longer imprisonment than had been promised because after the plea was changed the court learned that Elksnis was a second felony offender.

268 F.2d 124 (8th Cir. 1959). And, every defense attorney plays the prophet as best he can. In the instant case, Rosa was fortunate in being given the security of the Judge's beneficence by learning immediately what most defendants are tortured over, can only hope for and anticipate—that the trial judge will follow the prosecutor's recommendation. Indeed, there is not a scintilla of evidence that suggests that Judge Gellinoff pressured or coerced Rosa to plead guilty or did anything more than inform him of the sentence that would be imposed.[6] Rosa's real complaint against Judge Gellinoff is that he took more seriously than some commentators feel appropriate the Supreme Court's admonition that a plea must be made only "after proper advice and with full understanding of the consequences," Kercheval v. United States, supra, 274 U.S. at 223, 47 S.Ct. at 583. See Pleas of Guilty, supra, 73–74. Cf. United States ex rel. McGrath v. LaVallee, supra, 348 F.2d at 376 (judge's remarks not "an enticement or threat by means of a prior commitment by the judge to the prisoner's sentence, but * * * merely a fair description of the consequences attendant upon the prisoner's choice of plea, a description that was manifestly essential to an informed decision on [his] part").

The record affords additional support for our conclusion that Rosa's plea was not improperly induced by any action or word of Judge Gellinoff. When, at the sentencing hearing, Rosa moved to reinstate his plea of not guilty to first degree robbery, his stated reason was that "he was acting hastily on the basis of trying to help his co-defendant Colon by permitting him to get the lesser sentence in view of Colon's proved participation in the crime." Although advised by able and experienced counsel, it is noteworthy that Rosa did not maintain that Judge Gellinoff had coerced or otherwise improperly induced his plea of guilty.

In sum, Judge Sugarman found that Rosa's plea stemmed from his own free choice, uninfluenced by threat or promise. We hold that this conclusion is amply supported by the evidence and in no event is "clearly erroneous." See United States ex rel. McGrath v. LaVallee, 348 F.2d at 376, and at 319 F.2d 315 (concurring opinion); United States ex rel. Crump v. Sain, 295 F.2d 699 (7th Cir. 1961), cert. denied, 369 U.S. 830, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962).

■■ Finally, Rosa's contention that he should have been permitted to withdraw his guilty plea at sentencing requires little comment. Even in federal trials, if a plea of guilty has been knowingly and voluntarily made, "permission to withdraw the plea may be granted at the discretion of the trial court and a denial thereof is reversible only if it appears that there has been an abuse of discretion." United States v. Lester, 247 F.2d 496, 500 (2d Cir. 1957). See also Kercheval v. United States, supra, 274 U.S. at 224, 47 S.Ct. 582; United States v. Hughes, 325 F.2d 789, 792 (2d Cir.), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964). A *fortiori*, on an application for habeas corpus by a state prisoner, our review is premised on the fact that the motion for withdrawal of the plea rests in the sound discretion of the trial judge. United States ex rel. Best v. Fay, 239 F.Supp. 632, 634 (S.D. N.Y.1965), aff'd, 365 F.2d 832 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967). In the instant case, no valid ground was presented for Rosa's requested change of plea, see Pleas of Guilty, supra, § 2.1, and there is no reason to believe that any injustice has been done. See and compare Jones v. Eyman, 353 F.2d 528 (9th Cir. 1966); United States ex rel. Elksnis v. Gilligan, supra. Under the circumstances, whether to permit withdrawal of the plea was within the state trial judge's discretion which clearly was not abused. Accord-

---

6. See note 3, supra.

ingly, we refuse to upset his decision on federal habeas corpus.

The court wishes to express its appreciation to Gerald W. Griffin, Esq., for his capable representation of appellant.

Affirmed.